FILED

2019 Apr-08  AM 09:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL HINES, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO.:** _____ |
| | ) | |
| **v.** | ) | (Removed from Jefferson County, |
| | ) | State Court, Civil Action |
| **3M COMPANY,** | ) | No: 2019-CV-00076) |
| | ) | |
| **Defendant.** | ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § § 1332, 1441, 1442(a)(1), and 1446, Defendant 3M

Company ("3M" or "Defendant") hereby gives notice of the removal of this civil

action from the State Court of Jefferson County, Alabama, to the United States

District Court for the Northern District of Alabama, Southern Division.  As grounds

for this removal, 3M states as follows:

This civil action was commenced on or about March 1, 2019, by the filing of

a Summons and Complaint in the State Court of Jefferson County, Alabama, a copy

of which is attached as **Exhibit 1**.[1]  3M was served with the Summons and Complaint

on March 12, 2019.  Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is filed

---

[1]     Plaintiff's Social Security number has been redacted from the exhibits that were attached
to his Complaint.

within 30 days of receipt, by service or otherwise, of the initial pleadings in this action.  All state court pleadings are attached as **Exhibit 2**.[2]

Plaintiff alleges personal injuries sustained while in training and/or on active military duty domestically and abroad.  Specifically, Plaintiff alleges that he suffered side effects, including tinnitus, loss of balance, and depression, from the use of Defendant's 3M's Dual-ended Combat Arms™ earplugs Version 2 ("CAEv2") while deployed for active duty in the United States Army from 2004-2008.  (Ex. 1 (Compl.)).

CAEv2 were designed by Aearo Technologies LLC ("Aearo") in close collaboration with the U.S. military.[3]  CAEv2 represented a revolutionary breakthrough in hearing protection for service members by allowing soldiers to maintain situational awareness (*e.g.*, to hear nearby voice commands) while also maintaining some protection from gunfire and other higher decibel impulse sounds.  CAEv2 met the U.S. military's specifications and helped the military provide hearing protection to service members.

This Court has jurisdiction over this action and the case is therefore removable.  Specifically, this action is removable for three separate and independent reasons.

---

[2]    Plaintiff's Social Security number has been redacted from the exhibits that were attached to his Complaint.
[3]    3M acquired Aearo in 2008.

*First*, this Court has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, and thus removal is proper under 28 U.S.C. § 1441.

*Second*, removal is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because Aearo was acting under the direction of a federal officer when it designed and sold the CAEv2, and 3M intends to assert various federal defenses— including the federal contractor defense and the combatant activities defense—in response to Plaintiff's claims. *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012) (removal under the federal officer removal statute "promotes litigating federal defenses … in a federal forum so that 'the operations of the general government [are not] arrested at the will of one of [the states]'") (*quoting Tennessee v. Davis*, 100 U.S. 257, 263, 25 L.Ed. 648 (1879)).

*Third*, this Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's alleged injuries occurred at least in part on "federal enclaves"— namely, U.S. military facilities—and thus removal is proper under 28 U.S.C. § 1441. (*See* Ex. 1 (Compl. ¶1) (Plaintiff alleges he used CAEv2 while in service with the United States Army from 2004-2008)); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) ("Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'").

## BACKGROUND

The CAEv2 is an earplug with two insertable ends developed specifically for the needs of the U.S. military for use as hearing protection in noisy environments. CAEv2 has a yellow end and green end. Each end has a different purpose. When the yellow end of the earplug is inserted, users can still hear nearby low-level sounds, like verbal communication, but receive protection from high-level impulse noise, like gunfire. In contrast, when the green end of the earplug is inserted, CAEv2 acts like a traditional earplug, providing steady and continuous protection from both ambient and impulse noise.

In the area of national defense, the U.S. military relies on close collaboration with private contractors to design and develop products, such as the CAEv2, and manufacture and supply those products in accordance with highly particular specifications balancing the multitude of operational and budgetary needs of equipping the nation's fighting forces. This litigation involves a classic example of that military-contractor collaboration.

CAEv2 was designed at the request of and in consultation with military audiologists, including Dr. Doug Ohlin. Dr. Ohlin at the time served in the capacity of Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventive Medicine (USACHPPM). Dr. Ohlin and his program gave direction to Aearo to ensure that the CAEv2 would appropriately balance performance with military operational needs for soldiers and military personnel. For

4

example, Dr. Ohlin proposed the inclusion of the filter that was a key updated feature of the CAEv2. Dr. Ohlin specifically directed Aearo to ensure that the CAEv2 would fit into a military-issued carrying case. Dr. Ohlin also was involved in Aearo's testing of the CAEv2.

Following the development of the product, Dr. Ohlin was involved in the ultimate approval of CAEv2 for military use and proposed purchasing CAEv2 to the Joint Readiness Clinical Advisory Board.

The military's specifications for the CAEv2 reflect the design direction that Dr. Ohlin and his program gave to Aearo. In particular, these specifications are memorialized in a Medical Procurement Item Description (MPID) that was used by the Defense Logistics Agency (the U.S. military's purchasing authority) in soliciting bids from Aearo for the CAEv2. Among other things, the MPID specified "military unique, double-ended ear plugs suitable for use as hearing protectors for military personnel in chronically noisy environments," that should "be designed to provide protection from the unique noises created by military firearms, while allowing the wearer to clearly hear normal speech . . . such as voice commands, on the battlefield" and should be "camouflage green or another suitable dark color."

Dr. Ohlin's involvement continued following the military's decision to purchase and deploy the CAEv2. He provided Aearo with feedback from military personnel as to using the CAEv2 and developed training and instructions for military personnel.

In sum, the CAEv2 was launched at the request of, and in close coordination with, the U.S. military. The CAEv2's design reflects the direction and feedback of individuals acting on behalf of the U.S. military. The U.S. military purchased the CAEv2 and issued it to service members like Plaintiff precisely because the CAEv2 fulfilled the military's specifications and accomplished the military's goal of balancing hearing protection with operational needs.

## BASES FOR FEDERAL JURISDICTION AND REMOVAL

A defendant need only submit a short and plain statement that sets forth plausible allegations supporting the grounds of removal. *See Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018); *see also Johnson v. Blackburn*, 2016 WL 5816114, at *1 (N.D. Ala. Oct. 25, 2016) (citing *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). The defendant is not required to make "evidentiary submissions." *Betzer*, 792 F.3d. at 1014; *see also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) (a defendant may carry its removal burden through factual allegations establishing federal jurisdiction); *Pudlowski v. The St. Louis Rams, LLC*, 829 F.3d 963, 964 (8th Cir. 2017) ("The Rams notice of removal did not need to be accompanied by a submission of evidence."). Instead, "***jurisdictional allegations control unless it is legally impossible for them to be true***." *Betzer*, 792 F.3d. at 1014 (emphasis added); *Junhong v. Boeing Co.*, 792 F.3d 814-15 (7th Cir. 2015) (rejecting notion that federal jurisdiction hinges upon a high degree of certainty that jurisdictional facts exist).

6

## I.     THIS COURT HAS DIVERSITY JURISDICTION.

Federal courts have diversity jurisdiction under 28 U.S.C. § 1332 "if the parties are citizens of different states and the amount in controversy exceeds $75,000 …." *Popov v. Portage Wolf LLC*, 2018 WL 5276504, at *1 (N.D. Ind. Oct. 24, 2018). Both requirements are met here.

### A.     The Parties Are Diverse.

Plaintiff is a citizen of Alabama. (Ex. 1 (Compl. at signature block)).

3M is not a citizen of Alabama. 3M is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in St. Paul, Minnesota. Accordingly, 3M was, at the time of filing of the Complaint, and still is, a citizen of the States of Delaware and Minnesota within the meaning of 28 U.S.C. §1332 (c)(1), which provides that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *See also*, *3123 SMB LLC v. Horn*, 880 F.3d 461, 462-63 (9th Cir. 2018) (providing that, "[f]or purposes of determining diversity jurisdiction, 'a corporation shall be deemed to be a citizen of every State by which it has been incorporated and of the State where it has its principal place of business) (citing 28 U.S.C. § 1332(c)(1)).

Because Plaintiff is a citizen of Alabama and Defendant is a citizen of Delaware and Minnesota, the two parties are completely diverse.

**B.   The Amount In Controversy Requirement Is Met.**

For the purposes of 28 U.S.C. § 1332(a), it is apparent from the face of the Complaint the amount in controversy in this case clearly exceeds the sum or value of $75,000, exclusive of interest and costs.  Plaintiff seeks recovery for lost wages, lost earnings, pain and suffering, and mental anguish, in the amount of $1,300,000.00.  (Ex. 1 (Compl at Demand for Relief.)).  There is no evidence showing to a legal certainty that the amount in controversy has not been met.  *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S. Ct. 586, 590 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

Therefore, all the requirements are met for removal under 28 U.S.C. §§ 1332 and 1441.  Because the controversy in this civil action is wholly between citizens of different states and because, based on the allegations contained in the Complaint, the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, 3M may remove this action pursuant to 28 U.S.C. §§ 1332 and 1441.

## II.   REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE.

Removal is also proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer.

Removal rights under this section are much broader than under the general removal statute, 28 U.S.C. § 1441. *See Ayo v. 3M Co.*, 2018 WL 4781145, at *6 (E.D.N.Y. Sept. 30, 2018) ("[W]hile removal under the general removal statute, 28 U.S.C. § 1441, is generally disfavored, removal under the federal officer removal statute is favored in the interest of public policy.") (internal citations and quotations omitted). Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because Section 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prod.*, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011). This important federal policy "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see also Sparks v. Cullman Elec. Coop.*, 2016 WL 927032, at *2 (N.D. Ala. Mar. 11, 2016). And a court analyzing removal under the federal officer statute "views the facts in the light most favorable to the defendants." *Ayo*, 2018 WL 4781145, at *6.

"Federal officer removal is proper when the defendant (1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense." *Betzner*, 910 F.3d at 1015 (internal citations omitted); *Mesa v. California*,

9

489 U.S. 121, 124-25, 129-31, 134-35 (1989) (same). All requirements for removal under § 1442(a)(1) are satisfied here.

### A.    3M Is A "Person" Under The Federal Officer Removal Statute.

3M is a "person" under the federal officer removal statute. *See Betzner*, 910 F.3d at 1015 ("Corporations are persons under § 1442(a), and so, Boeing has easily satisfied the 'person' requirement within the meaning of the federal officer removal statute."); *see also Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (for purposes of § 1442(a)(1), the term "person" includes "'companies, associations, firms, [and] partnerships.'").

### B.    The "Acting Under" Requirement Is Satisfied.

To satisfy the second requirement ("acting under" a federal officer), "a private person's actions 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Jacks,* 701 F.3d at 1230 (holding that health insurer contracted by U.S. Office of Personnel Management was "acting under" a federal officer) *(quoting Watson, 551* U.S. at 152). "The words 'acting under' are to be interpreted broadly." *Isaacson*, 517 F.3d at 136. Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp,* 842 F.3d at 813.[4]

---

[4]    *See also Jacks,* 701 F.3d at 1230 (although "not limitless, '[t]he words "acting under" are broad,' and the Supreme Court 'has made clear that the statute must be "liberally construed.'") *(quoting Watson, 551* U.S. at 147); *accord Caver v. Cent. Alabama Elec. Coop.*,

The "acting under" requirement is met here because Plaintiff directly challenges Defendant's alleged conduct in providing vital products "that, in the absence of Defendant, the Government would have had to produce itself." *Isaacson, 517* F.3d at 137.  As discussed above, Aearo designed and manufactured the CAEv2 at the direction of the U.S. military to meet the military's specific needs to provide hearing protection.

Indeed, Plaintiff's Complaint effectively concedes that Aearo was "acting under" federal officers of the Department of Defense and its agencies when manufacturing and selling the CAEv2 he was provided.  Plaintiff alleges that Aearo specifically sold the CAEv2 for the military's use and to meet the military's specifications.  (*See* Ex. 1 (Compl. ¶ 1)).

Not only did 3M meet "specific performance criteria established by the U.S. Government," it developed the CAEv2 under the direction of, and with significant involvement of, representatives of the U.S. military.  *See e.g. Ruppel v. CBS Corp.,* 701 F.3d 1176, 1181 (7th Cir. 2012) (holding that defendant was "acting under" a federal officer because it "worked hand-in-hand with the government, assisting the federal government in building warships.  'Acting under' covers situations, like this one, where the federal government uses a private

---

845 F.3d 1135, 1142-43 (11th Cir. 2017) (defendant "acted under" a federal officer in assisting and carrying out the duties that the government would have itself had to perform); *see also Hepstall v. Humana Health Plan, Inc.*, 2018 WL 4677871, at *5 (S.D. Ala. July 3, 2018) (rejecting a narrow interpretation of the "acting under" requirement).

corporation to achieve an end it would have otherwise used its own agents to complete.").[5]

As described above, the military's involvement went beyond merely establishing standards or general guidelines. Its involvement included requests to modify operational features, such as ensuring the CAEv2 would fit in military-issued containers by shortening the stem. Such involvement is quintessential activity "acting under" a federal officer. *See e.g. Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387 (5th Cir. 1998) (authorizing removal of a tort suit against private defense contractors that manufactured Agent Orange); *Ayo,* 2018 WL 4781145 (3M "acted under" a federal officer when it "helped the government" develop an important military product "at the government's request").[6]

---

[5]     *See also Isaacson,* 517 F.3d at 137 ("Defendants contracted with the Government to provide a product that the Government was using during war—a product that, in the absence of Defendants, the Government would have had to produce itself."); *Caver,* 845 F.3d at 1142-43 (finding "acting under" requirement satisfied where defendant assisted the government in accomplishing its goals by providing electricity to rural areas); *In re National Prescription Opiate Litig.,* 327 F. Supp. 3d 1064, 1075-76 (N.D. Ohio 2018) (removal under § 1442 was appropriate were defendant was subject to "precise specifications" of government contract, administration of contract was overseen by federal official, and absent defendant's role, government would have had to warehouse and distribute product itself).

[6]     *Gordon v. Air & Liquid Sys. Corp.,* 990 F. Supp. 2d 311, 320 (E.D.N.Y. 2014) (contractor was "acting under" a federal officer for purposes of removal statute when it provided products used in construction of ships to Navy's precise specifications); *Marley v. Elliot Turbomachinery Co., Inc.,* 545 F.Supp.2d 1266, 1273 (S.D. Fla. 2008) (finding the "acting under" requirement was satisfied where defendants' manufacturing and supplying of asbestos-containing products occurred in the course of their contractual relationship with the Navy); *Betzner,* 910 F.3d at 1015 ("Boeing plausibly alleged that it acted under federal officers when it contracted to manufacture heavy bomber aircraft for the United States Air Force, and that it acted under the military's detailed and ongoing control.").

## C.     The "Causation" Requirement Is Satisfied.

Whether a defendant's actions were taken "under color of federal office . . .

has come to be known as the causation requirement." *Isaacson,* 517 F.3 d at 137

(internal quotation marks, alterations, and citation omitted); *see also Betzner*, 910

F.3d at 1015 (the "acting under the color of federal authority" requirement," is

"distinct from the 'acting under' requirement in the same way a bona fide federal

officer could not remove a trespass suit that occurred while he was taking out the

garbage—there must be a 'causal connection between the charged conduct and

asserted official authority.'").  Like the "acting under" requirement, "[t]he hurdle

erected by this requirement is quite low." *Id.*  Courts "credit Defendants' theory of

the case when determining whether [this] causal connection exists." *Isaacson,* 517 F.3d

at 137 *(*citing *Acker,* 527 U.S. at 431-32 (1999) ("demanding an airtight case on the

merits in order to show the required causal connection" would "defeat the purpose

of the removal statute");[7] *see Marley*, 545 F.Supp.2d at 1274 ("All a defendant needs

to do to show a causal nexus is to establish that the plaintiff's claims arise from the

defendants' performance of their duties under contract with the Navy.  This the

defendants have done.") (citing *Magnin v. Teledyne Continental Motors*, 91 F.3d

1424, 1427-28 (11th Cir. 1996)).  In 2011, Congress further expanded Section 1442

---

[7]      The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions
subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL
5109532, at *5.

by amending section 2(b) to permit removal "for *or relating to* any acts under color" of federal office, so as "to broaden the universe of acts that enable Federal officers to remove to Federal court." H.R. REP. 112-17, 6, 2011 U.S.C.C.A.N. 420, 425 (emphasis showing addition).

"To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties." *Isaacson,* 517 F.3d at 137-38 (emphasis in original). Here, Plaintiff's claim arises from Aearo's production and sale of CAEv2 to military specifications. Plaintiff alleges that the design of the CAEv2 is defective. Aearo developed and designed the Combat ArmsTM earplugs, including establishing its purportedly defective length, at the direction of federal officers, while performing its contractual duties. *Marley*, 545 F.Supp.2d at 1274; *see Ayo*, 2018 WL 4781145, at *9 (denying motion to remand and finding causal connection where the conduct complained of occurred because of what the government asked contractors to do); *see also Corley v. Long-Lewis, Inc.*, 688 F.Supp.2d 1315, 1334 (N.D. Ala. 2010) (finding a "causal nexus" where defendant designed turbines under the supervision of the Navy, according to its specifications).

Further, even if Plaintiff were to assert that any alleged defect was the result of an act not specifically contemplated by the government contract, "it is enough that the contracts gave rise" to the harm alleged. *See Isaacson,* 517 F.3d at 138. "[W]hether the challenged act was outside the scope of Defendants' official duties,

14

or whether it was specifically directed by the federal Government, is one for the federal—not state—courts to answer." *Id. (*citing *Willingham,* 395 U.S. at 409.). Thus, any argument that the alleged defect was not specifically directed by the government cannot defeat federal officer removal. *See Ayo*, 2018 WL 4781145, at *9 ("To satisfy the causation requirement, Manufacturing Defendants need only show that the conduct at issue occurred during their performance of the government-directed action, even if the government did not call for the complained-of act.").

### D.    3M Has "Colorable" Federal Defenses.

3M intends to assert federal defenses in response to Plaintiff's claims, including both the government contractor defense and the combatant activities defense.

Courts around the country have held that the government contractor defense and the combatant activities defense support removal under § 1442(a)(1). *See, e.g., Betzner*, 910 F.3d at 1015-16 (finding colorable government contractor defense supports removal under Section 1442); *Jacks,* 701 F.3d at 1234-35 (government contractor defense supports removal under § 1442); *Isaacson,* 517 F.3d at 139 (same); *Zeringue v. Crane Co.,* 846 F.3d 785 (5th Cir. 2017) (same); *McMahon v. Presidential Airways, Inc.,* 410 F. Supp. 2d 1189, 1200 (M.D. Fla. 2006) (both government contractor defense and combatant activities defenses supported removal under Section 1442); *Norwillo v. Purple Shovel, LLC*, 2017 WL 10294856, at *2

(M.D. Fla. Mar. 21, 2017) ("STL asserts that it will advance colorable defenses, i.e. preemption and the government contractor defense.").

A defendant need not prove its defense at the removal stage; a defendant need only show that a federal defense is "colorable." *Jacks,* 701 F.3d at 1235. Courts will not "require that these defenses be clearly sustainable in order to support removal under § 1442(a)(1)." *Id. (*citing *Willingham,* 395 U.S. at 406-07 ("[The federal officer removal statute] is broad enough to cover all cases where federal officers can raise a colorable defense. . . . The officer need not win his case before he can have it removed.")); *Magnin,* 91 F.3d at 1427 ("That defense need only be plausible; its ultimate victory is not to be determined at the time of removal."); *Corley*, 688 F.2d at 1332 (same); *see also Caver*, 845 F.3d at 1145 ("The colorable federal defense need only be plausible…"). As the Seventh Circuit explained in *Betzner*:

> The colorable federal defense requirement fulfills Article III jurisdiction and reflects Congress's intent to have federal defenses litigated in federal court. *Id.* at 1182. "Requiring the defense only be colorable, instead of 'clearly sustainable,' advances this goal" and "at this point, we are concerned with who makes the ultimate determination, not what that determination will be." *Id.* (internal citations omitted); *see also Willingham*, 395 U.S. at 407, 89 S.Ct. 1813 (A defendant invoking § 1442(a) "need not win his case before he can have it removed."); *Venezia*, 16 F.3d at 212 ("A federal defendant need not show that he is entitled to prevail in order to have access to the federal forum.") (emphasis in original).

Additionally, at the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive

motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo, 771* F.3d at 116 (citing *Kircher v. Putnam Funds Trust,* 547 U.S. 633, 644 n. 12 (2006)); *Betzner*, 910 F.3d at 1016 (holding that "the district court erred in concluding that Boeing was required to submit evidence to support its removal allegations").[8] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.,* 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo,* 771 F.3d at 116 (quoting *Willingham,* 395 U.S. at 409).

### E.  3M Has A Colorable Government Contractor Defense.

Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle,* 487 U.S. at 512; *see also Betzner*, 910 F.3d at 1016 (same).

---

[8]   *See also Kraus v. Alcatel-Lucent*, C.A. No. 18-2119, 2018 WL 3585008, at *2 (E.D. Pa. Jul. 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determines whether there are sufficient facts alleged to raise a colorable defense.").

3M has satisfied all of these elements for purposes of removal. *First*, as discussed above, the Defense Logistics Agency established reasonably precise specifications governing double-ended non-linear earplugs' performance, testing, inspection, packaging, and labeling, with which the CAEv2 complied. The CAEv2 were subject to stringent military specifications. *Second*, when properly used, the CAEv2 fully conform to those specifications. *Third*, the government was adequately informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring the CAEv2 earplugs. The U.S. military was actively involved in discussions with Aearo in the development of the CAEv2 regarding its length and instructions for use. Aearo's engineers discussed the challenges, and trade-offs, in conforming the design of the CAEv2 to fit within the military's desired carrying cases and with its other equipment. These facts are more than enough to support a "colorable" government contractor defense and removal under the federal officer statute. *See Betzner*, 910 F.3d at 1016 (finding government contractor defense colorable where defendant provided plausible allegations it manufactured aircraft according to government specifications and government was aware of any potential hazards).

At minimum, this constitutes colorable evidence that the U.S. military generally "made a discretionary determination" regarding the requirements and design of the CAEv2's benefits against the alleged risks. *See In re Agent Orange Prod Liab. Litig.,* 517 F.3d 76, 90 (2d Cir. 2008); *Ayo*, 2018 WL 4781145, at *14

18

(holding removal proper under § 1442 because defendants presented "colorable evidence" that government was aware of alleged problems with product at issue); *see Betzner*, 910 F.3d at 1016 (finding government contractor defense colorable where defendant provided plausible allegations it manufactured aircraft according to government specifications); *see Corley*, 688 F.Supp.2d at 1334 (finding a colorable federal contractor defense); *see also Albrecht,* 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where the government knew as much or more than the defendant contractor about the hazards of the product.") (citation omitted). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *Agent Orange,* 517 F.3d at 89-90; *see also Ayo,* 2018 WL 4781145 at *13.

### F. 3M Has A Colorable Combatant Activities Defense.

The "combatant activities defense" is a complete defense for claims arising out of combat activities. Although Congress waived sovereign immunity for tort claims against the United States and those acting on its behalf in the Federal Tort Claims Act, it excluded "claims arising out of combatant activities of the military or armed forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j). The combatant activities exception has been applied to contractors to create a federal defense shielding manufacturers from tort claims arising from war. *See, e.g., Saleh v. Titan Corp.,* 580 F.3d 1, 6 (D.C. Cir. 2009) (applying § 2680(j) exception to tort claims

arising from treatment of inmates in military prison in Iraq brought against private contractor); *Bentzlin v. Hughes Aircraft Co.,* 833 F. Supp. 1486, 1492 (C.D. Cal. 1993) ("The combatant activities exception generates a federal common law defense which immunizes manufacturers such as Hughes from state tort suits arising from war."). The combatant activities defense is broader than the government contractor defense under *Boyle* because it acts like "field preemption because it casts a[n] immunity net over any claim that *arises* out of combat activities." *Saleh,* 580 F.3d at 6 (emphasis in original; internal citation omitted).

Application of the defense has two elements: (1) the presence of combatant activities; and (2) that such activities occur during a time of war. The combatant activities element has been liberally construed and is not limited to the exertion of physical force. *See Johnson v. U.S.,* 170 F.2d 767, 770 (9th Cir. 1948). Rather, "activities both necessary to and in direct connection with actual hostilities" are included. *Id.* Ammunition supply, troop movement and logistical support, and holding prisoners of war have all qualified as combatant activities under the test. *See Aiello v. Kellogg, Brown & Root Servs.,* 751 F. Supp. 2d 698, 706 (S.D.N.Y. 2011).

Each factor is satisfied here. Plaintiff's Complaint alleges that he was diagnosed, at least in part, because of his involvement in combat, and that the CAEv2 issued to him by the U.S. military failed to provide adequate protection. (Ex. 1 (Compl. ¶ 1) ("While in service [from 2004 to 2008] I was issued Dual-Ended Combat Arms Earplugs… The Dual-Ended Combat Arms Earplugs

damaged my ears.")).   Claims in such circumstances fall within the scope of the combatant activities defense.   *See e.g., Bentzlin,* 833 F. Supp. at 1492-95 (holding that claims brought against missile manufacture for causing death of U.S. soldiers as a result of alleged product defect were barred by combatant activities defense).

Accordingly, 3M has a colorable basis to assert it is immune from tort claims arising from Plaintiff's harm suffered while he was engaged in combatant activities. This defense separately supports federal question jurisdiction under Section 1442 and removal to this Court.

### G.   3M Has A Colorable Basis For Asserting That This Case Presents A Nonjusticiable Political Question.

3M also intends to argue that Plaintiff's suit presents a nonjusticiable political question.  "Military activities often give rise to political questions." *McMahon v. Presidential Airways, Inc.,* 502 F.3d 1331, 1358 (11th Cir. 2007). Courts have recognized that "the interjection of tort law into the realms of foreign policy and military affairs would effectively permit judicial reappraisal of judgments the Constitution has committed to the other branches."  *Id.*  (citation and internal quotation omitted).  Thus, decisions about "strategy and tactics employed on the battlefield" are beyond a federal court's ability to review.  *Tiffany v. United States,* 931 F.2d 271, 277 (4th Cir. 1991).

As a general matter, cases brought by "soldiers injured at the hands of the military raise political questions."  *Whitaker,* 444 F. Supp. 2d at 1281; *see also*

*Bentzlin,* 833 F. Supp. at 1497-98; *Carmichael v. Kellogg Brown & Root Servs., Inc.,* 572 F.3d 1271 (11th Cir. 2009).  Moreover, "a soldier injured at the hands of a contractor which is performing military functions subject to the military's orders and regulations also raises the same political questions." *Whitaker,* 444 F. Supp. 2d at 1281.

This is such a case.  Plaintiff was a member of the U.S. Army and alleges that he was issued CAEv2 by the U.S. military and wore them during his service from 2004 to 2008.  (Ex. 1 (Compl. ¶ 1)).  Plaintiff further alleges that he wore the CAEv2 during his time in service and, as a result of its defective condition, now suffers from tinnitus.  *Id.*  There is no doubt that the U.S. military made the decision to issue the CAEv2 to Plaintiff, that Plaintiff used them during training firing and combat exercises, and that the military directed his activities in combat.[9]  *See Whitaker,* 444 F. Supp. 2d at 1279 (concluding that suit against Army contractor for negligent operation of a convoy vehicle presented a political question where the Army regulated "all aspects of control, organization, and planning of Army convoy operations").

As discussed above, the design of the CAEv2 reflects the balance struck by the military between hearing protection and military operational needs.  The

---

[9]    This case is, therefore, unlike *Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082, 1104 (N.D. Ill. 2015), where the court rejected the application of the political question doctrine and remanded to state court because plaintiffs were family members of civilian contractors, not service members, and the military had "only tangential involvement" in those civilians' deaths in a plane crash.

decision to issue the CAEv2 to servicemembers and the instructions to servicemembers, like Plaintiff, about when and where to use them, was made by the U.S. military.  Accordingly, resolution of Plaintiff's claim for design defect requires inquiry into the military's decisions and conduct.  *See Gilligan v. Morgan,* 413 U.S. 1, 10 (1973) ("The complex subtle, and professional decisions as to the composition, training, equipping and control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches.").  Plaintiff's claim therefore is nonjusticiable and is barred by the political question doctrine.

## III. THIS COURT HAS FEDERAL ENCLAVE JURISDICTION.

In addition, removal of this action is proper because Plaintiff's claim almost certainly arose, at least in part, at a federal enclave—namely, a U.S. military facility.  (*E.g.*, Ex. 1 (Compl. ¶ 1) ("Plaintiff used Defendants' dual-ended [CAEv.2] *while in service*" with the United States Army) (emphasis added)).  To that extent, the claims are governed by federal law and are subject to this Court's federal question jurisdiction under 28 U.S.C. § 1331.  Thus, this action is removable under 28 U.S.C. § 1441(a).

"A federal enclave is a portion of land over which the United States government exercises federal legislative jurisdiction."  *Brookhaven Sci. Assocs., LLC v. Donaldson,* No. 04 Civ. 4013(LAP), 2007 WL 2319141, at *5 (S.D.N.Y.

Aug. 9, 2007) (internal quotation and citation omitted).  The Constitution confers on Congress the power "[t]o exercise exclusive legislation" over the District of Columbia "and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings."  U.S. Const. art. I, § 8, cl. 17.  "It has long been settled that where lands for such a purpose are purchased by the United States with the consent of the State legislature, the jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, to the United States, thereby making the jurisdiction of the latter the sole jurisdiction." *Surplus Trading Co. v. Cook,* 281 U.S. 647, 652 (1930).

Because the United States exercises sole lawmaking authority over a federal enclave, the law applicable to that enclave is, by definition, federal law, although such federal law may incorporate state-law rules of decision.  *See, e.g., Mater v. Holley,* 200 F.2d 123, 124 (5th Cir. 1952) ("[A]ny law existing in territory over which the United States has 'exclusive' sovereignty must derive its authority and force from the United States and is for that reason federal law"); *accord Macomber v. Bose,* 401 F.2d 545, 546 (9th Cir. 1968) ("State law theretofore applicable within the [ceded] area was assimilated as federal law, to remain in effect until changed by Congress.  Rights arising under such assimilated law, arise under federal law and are properly the subject of federal jurisdiction."); *Brookhaven Sci. Assocs.,* 2007 WL 2319141, at *5 ("[W]hen an area becomes a federal enclave, the

state law in effect at the time of cession becomes federal law and is the applicable law unless Congress provides otherwise.").

Federal courts have federal-question jurisdiction under 28 U.S.C. § 1331 for actions involving tort claims that arise on federal enclaves. *See, e.g., Akin v. Ashland Chem. Co.,* 156 F.3d 1030, 1034 (10th Cir. 1998) (movant properly removed case to federal court when case was removed based on movant's status as a "person acting under" a federal officer, and status of the Air Force base as a federal enclave). It follows that such actions, if originally filed in state court, may be removed to federal court under 28 U.S.C. § 1441(a). *See, e.g., Allison v. Boeing Laser Tech. Servs.,* 689 F.3d 1234, 1236 (10th Cir. 2012) (affirming grant of summary judgment on state employment law claims as barred by federal enclave doctrine after removal from state court).

While Plaintiff's complaint does not specifically identify the U.S. military facilities where he was issued and used CAEv2 and allegedly suffered hearing damage, one or more of these facilities undoubtedly qualifies as a federal enclave — particularly given that he alleges that he used CAEv2 in connection with American military service. *See Jamil v. Workforce Res., LLC,* Case No.: 18-CV-27-JLS (NLS), 2018 WL 2298119, at *2 (S.D. Cal. May 21, 2018) (inferring from Complaint that some of the alleged events must have occurred at Marine Corps base, a federal enclave, and denying motion to remand); *see also Corley,* 688 F.Supp.2d at 1328 ("Failure to indicate the federal enclave status and location of the exposure will not

25

shield plaintiffs from the consequences of federal enclave status."). Because Plaintiff's claim almost certainly arose, at least in part, at a federal enclave, this Court has subject matter jurisdiction over the action, and removal of the action is proper under 28 U.S.C. § 1441(a).

## CONCLUSION

**WHEREFORE**, Defendant 3M respectfully requests that this action in the Circuit Court of Jefferson County, State of Alabama be removed to this Court, and that no further proceedings be had in state court.

Respectfully submitted on this, the 5th day of April, 2019.


*s/ Rusha C. Smith*
Rusha C. Smith
*Attorney for Defendant 3M Company*

**OF COUNSEL**
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL  35203-2119
Telephone:  (205) 521-8000
rsmith@bradley.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served the above and foregoing by United States Mail in a properly addressed envelope with adequate postage thereon to the following individual on this, the 5ᵗʰ day of April, 2019:

Mr. Michael Hines (*Pro se* Plaintiff)
6103 Barrington Park
Moody, AL  35004

*s/Rusha C. Smith*
Of Counsel

# EXHIBIT 1

THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

MICHAEL HINES, JR.,               )
                                  )
        Plaintiff,                )
                                  )
                                  )      CV:        CV2019O0076
V.                                )
                                  )
3M                                )      JURY TRIAL DEMANDED
                                  )
                                  )
        Defendant.                )

FILED IN OFFICE
CIRCUIT CIVIL DIVISION

MAR 01 2019

JACQUELINE ANDERSON SMITH
CLERK

**COMPLAINT**

I Michael Hines served in the United States Army from 2004-2008. While in service I was

issued Dual-Ended Combat Arms Earplugs, that were manufactured by the Minnesota based

company 3M between 2002 and 2015. The Dual-Ended Combat Arms Earplugs damaged my

ears and as a result I was diagnosed with tinnitus, which leaves a constant ringer in both ears.

Due to the ear plugs being defective, I have lost many job opportunities oversea because I

always failed the hearing examines due to tinnitus and the loss of balance to the extinct, I have

to wear large knee braces, also being affected by the dizziness. By not being able to be

employed in the field that I enjoyed it left me depressed and made me go into isolation after

feeling less worthy due to not be able to obtain a job. The defendants 3M product has ruined

1   my life and altered my body for the worst because I have to live with this injury for the rest of

2   my life  and I did not ask to have this injury.

3

4       Attached you will find that on, July 26, 2018 the Department Of Justice settled with 3M for

5   violating the False Claims Act(Exhibit A), which led to the public gaining notice of their actions.

6   Medical documentation(Exhibit B) that shows that Plaintiff has been diagnosed with tinnitus

7   which is an injury caused by the defective earplugs.

8

9   **Demand For Relief: $1,300,000**
10  **Pain, suffering and mental anguish; and past and future wage loss due to the tinnitus**

Michael Hines (Pro Se)
6103 Barrington Park
Moody, Al 35004
(907) 301-5169

CV201900076

# EXHIBIT A

Case 3:19-cv-00952-MCR-GRJ   Document 1   Filed 04/05/19   Page 32 of 53

2/26/2019                3M Company Agrees to Pay $9.1 Million to Resolve Allegations That it Supplied the United States With Defective Dual-Ended Combat Ar…

## JUSTICE NEWS

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE                                               Thursday, July 26, 2018

## 3M Company Agrees to Pay $9.1 Million to Resolve Allegations That it Supplied the United States With Defective Dual-Ended Combat Arms Earplugs

The Department of Justice announced today that 3M Company (3M), headquartered in St. Paul, Minnesota, has agreed to pay $9.1 million to resolve allegations that it knowingly sold the dual-ended Combat Arms Earplugs, Version 2 (CAEv2) to the United States military without disclosing defects that hampered the effectiveness of the hearing protection device.

"The Department of Justice is committed to protecting the men and women serving in the United States military from defective products and fraudulent conduct," said Acting Assistant Attorney General Chad A. Readler of the Department's Civil Division. "Government contractors who seek to profit at the expense of our military will face appropriate consequences."

"Through rigorous enforcement of the False Claims Act, we protect taxpayer dollars from waste, fraud, and abuse," said U. S. Attorney Sherri Lydon for the District of South Carolina. "And in this case in particular, we are proud to defend the integrity of our military programs and ensure that our men and women in uniform are adequately protected as they serve our country."

"Today's settlement will ensure that those who do business with the government know that their actions will not go unnoticed," said Frank Robey, director of the U.S. Army Criminal Investigation Command's Major Procurement Fraud Unit. "Properly made safety equipment, for use by our Soldiers, is vital to our military's readiness. Our agents will respond robustly to protect the safety of our military."

"This settlement demonstrates the commitment of the Defense Criminal Investigative Service and our law enforcement partners to hold companies accountable for supplying substandard products, in particular products that could directly impact our service members' health and welfare. DCIS protects the integrity of Defense Department programs by rooting out fraud, waste, and abuse that negatively affect the wellbeing of our troops," said Special Agent in Charge Robert E. Craig, Jr., DCIS Mid-Atlantic Field Office.

The settlement announced today resolves allegations that 3M violated the False Claims Act by selling or causing to be sold defective earplugs to the Defense Logistics Agency. Specifically, the United States alleged that 3M, and its predecessor, Aearo Technologies, Inc., knew the CAEv2 was too short for proper insertion into users' ears and that the earplugs could loosen imperceptibly and therefore did not perform well for certain individuals. The United States further alleged that 3M did not disclose this design defect to the military.

The allegations resolved by the settlement were brought in a lawsuit filed under the *qui tam*, or whistleblower, provisions of the False Claims Act. The act permits private parties to sue on behalf of the government when they believe that defendants submitted false claims for government funds and to share in any recovery. As part of today's resolution, the whistleblower will receive $1,911,000.

The settlement was the result of a coordinated effort by the Civil Division of the Department of Justice, the United Gridulator orney's Office for the District of South Carolina, the Army Criminal Investigation Command, and the Defense Criminal Investigative Service.

The case is captioned *United States ex rel. Moldex-Metric v. 3M Company*, Case No. 3:16-cv-1533-MBS (D.S.C.).  The claims resolved by the settlement are allegations only, and there has been no determination of liability.

**Topic(s):**
False Claims Act

**Component(s):**
Civil Division
USAO - South Carolina

**Press Release Number:**
18-984

*Updated July 26, 2018*

Gridulator

CV201900076

# EXHIBIT B

```
MailMan message for BLAIR,MARY  RELEASE OF INFORMATION CLERK
Printed at BIRMINGHAM.MED.VA.GOV  12/26/18@12:38
Subj: HINQ response for HINES,MICHAEL DEWAYNE JR /requested by BLAIR,MA
[#200010072] 12/26/18@12:37  53 lines
From: POSTMASTER  In 'IN' basket.   Page 1
--------------------------------------------------------------------
HINES,MICHAEL DEWAYNE JR MAY 15,1985                      \Div:
BIRMINGHAM VA CLINIC
     VBA name = MDHINES                    Verified Svc-Data
  Prior names =
        MICHAEL DEWAYNE HINES

        MICHAEL DEWAYNE HINES

        Name = MICHAEL D HINES
     Address = 1512 LaTouche St Uni
     Address = Anchorage AK
        ZIP = 99501
        Sex = MALE
Date of Birth = MAY 15, 1985
     VBA SSN =            Verified SSA

     Claim Number =
   Service Number =
  Folder Location = 363 - ANCHORAGE RO
           POW = Not applicable
  Total Active Svc = 3 yr 7 mo 8 days
INDICATORS( Active Duty Training NO    Homeless Veteran NO )

 Service data - VBA
--------------------------------------------------------------------
  Svc Branch: Army

        EOD: OCT 21,2004
        RAD: MAY 28,2008

  Char of Svc: Under Hon Cond

Type Benefit:
DISABILITIES
Combined %=100     Disab. in Record=4     Eff. Date of Comb. Eval.=NO
V 26,2012

                                        Orig
  Curr
    SC Disability                  %  Extr  Eff Dt
  Eff Dt
9411-POST-TRAUMATIC STRESS DISORDER     -100%-  -NOV 26,2012-
NOV 26,2012
5003-ARTHRITIS, DEGENERATIVE            -10 %-LL-NOV 26,2012-
NOV 26,2012
5260-LIMITED FLEXION OF KNEE            -10 %-RL-NOV 26,2012-
NOV 26,2012
6260-TINNITUS                           -10 %-  -NOV 26,2012-
NOV 26,2012
                                                  CERTIFIED COPY

     Perm.,Total Disability = Yes         DEPARTMENT OF VETERANS AFFAIRS
     Competency indicator = Competent, or not an issue    700 SOUTH 19TH STREET
                                                  BIRMINGHAM, AL 35233
```

# CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of _March_____, 2019, I have served a copy of the above and foregoing on counsel for all parties by:

**X**      Emailing Defendants and Placing a copy of same in the Mail.

3M

3M Corporate Center

St. Paul, Minnesota 55144

T: 1(888)364-3577

# EXHIBIT 2

State of Alabama
Unified Judicial System

Form ARCiv-93    Rev.5/99

**COVER SHEET**
**CIRCUIT COURT – CIVIL CASE**
(Not For Domestic Relations Cases)

Case Number: C I V - V 2 0 1 9 0 0 0 7 6 - . .

Date of Filing: [ ] [ ] / [ ] [ ] / [ ] [ ] [ ] [ ]
Month    Day    Year

Judge Code: [ ] [ ] [ ] [ ]

**GENERAL INFORMATION**

IN THE CIRCUIT COURT OF     JEFFERSON     ALABAMA
(Name of County)

**Michael Hines**     v.   3 M

First Plaintiff:
- [ ] Business
- [ ] Government
- [✓] Individual
- [ ] Other

First Defendant:
- [✓] Business
- [ ] Government
- [ ] Individual
- [ ] Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- [ ] WDEA - Wrongful Death
- [✓] TONG - Negligence: General
- [ ] TOMV - Negligence: Motor Vehicle
- [ ] TOWA - Wantonness
- [✓] TOPL - Product Liability/AEMLD
- [ ] TOMM - Malpractice-Medical
- [ ] TOLM - Malpractice-Legal
- [ ] TOOM - Malpractice-Other
- [ ] TBFM - Fraud/Bad Faith/Misrepresentation
- [ ] TOXX - Other:

**TORTS: PERSONAL INJURY**
- [ ] TOPE - Personal Property
- [ ] TORE - Real Property

**OTHER CIVIL FILINGS**
- [ ] ABAN - Abandoned Automobile
- [ ] ACCT - Account & Nonmortgage
- [ ] APAA - Administrative Agency Appeal
- [ ] ADPA - Administrative Procedure Act
- [ ] ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- [ ] MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
- [ ] CVRT - Civil Rights
- [ ] COND - Condemnation/Eminent Domain/Right-of-Way
- [ ] CTMP - Contempt of Court
- [ ] CONT - Contract/Ejectment/Writ of Seizure
- [ ] TOCN - Conversion
- [ ] EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- [ ] CVUD - Eviction Appeal/Unlawful Detainer
- [ ] FORJ - Foreign Judgment
- [ ] FORF - Fruits of Crime Forfeiture
- [ ] MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- [ ] PFAB - Protection From Abuse
- [ ] FELA - Railroad/Seaman (FELA)
- [ ] RPRO - Real Property
- [ ] WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- [ ] COMP - Workers' Compensation
- [ ] CVXX - Miscellaneous Circuit Civil Case

FILED IN OFFICE
CIRCUIT CIVIL DIVISION
MAR 0 1 2019
JACQUELINE ANDERSON SMITH
CLERK

**ORIGIN** (check one):
- F [✓] INITIAL FILING
- A [ ] APPEAL FROM DISTRICT COURT
- O [ ] OTHER:
- R [ ] REMANDED
- T [ ] TRANSFERRED FROM OTHER CIRCUIT COURT

HAS JURY TRIAL BEEN DEMANDED?   [✓] YES   [ ] NO
Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:**   [✓] MONETARY AWARD REQUESTED   [ ] NO MONETARY AWARD REQUESTED

ATTORNEY CODE: [ ] [ ] [ ] [ ] [ ] [ ]    1 / 1 / 19
Date

Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**   [✓] YES   [ ] NO   [ ] UNDECIDED

| State of Alabama<br>Unified Judicial System<br><br>Form C-10<br>Page 1 of 2          Rev.1.95 | AFFIDAVIT OF SUBSTANTIAL<br>HARDSHIP AND ORDER | Case Number<br><br>CV201900076 |
|---|---|---|

IN THE _____
_____ COURT OF _____
     (Circuit, District, or Municipal)

STYLE OF CASE: __Michael Hines_____, ALABAMA
                        Plaintiff(s)           (Name of County or Municipality)

                        v. __3M____
                        Defendant(s)

TYPE OF PROCEEDING: _____ CHARGE(s) (if applicable): _____

☑ CIVIL CASE– I, because of substantial hardship, am unable to pay the docket fee and service fees in this case. I request that payment of these fees be waived initially and taxed as costs at the conclusion of the case.

☐ CIVIL CASE– (such as paternity, support, termination of parental rights, dependency) – I am financially unable to hire an attorney and I request that the court appoint one for me.

☐ CRIMINAL CASE– I am financially unable to hire an attorney and request that the court appoint one for me.

☐ DELINQUENCY/NEED OF SUPERVISION– I am financially unable to hire an attorney and request that the court appoint one for my child/me

SECTION 1.                               AFFIDAVIT

**FILED IN OFFICE**
CIRCUIT-CIVIL DIVISION
**MAR 01 2019**
JACQUELINE ANDERSON SMITH
CLERK

1.  IDENTIFICATION
    Full name __Michael Dewayne Hines Jr.__
    Spouse's full name (if married) _____ Date of Birth __5/15/85__
    Complete home address __6103 Barrington Park Moody, AL 35004__
    Number of people living in household __3__
    Home telephone number __(907) 301-5169__
    Occupation/Job _____
    Driver's license number _____ Length of employment _____
    Employer __Unemployed_____ *Social Security Number __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__
    Employer's address _____ Employer's telephone number _____

2.  ASSISTANCE BENEFITS
    Do you or anyone residing in your household receive benefits from any of the following sources? (if so, please check those which apply)
    ☐ AFDC    ☐ Food Stamps    ☐ SSI    ☐ Medicaid    ☐ Other: _____
3.  INCOME/EXPENSE STATEMENT

    Monthly Gross Income:
    Monthly Gross Income
    Spouse's Monthly Gross Income (unless a marital offense)          $ ___0___
    Other Earnings: Commissions, Bonuses, Interest Income, etc.       _____
    Contributions from Other People Living in Household               _____
    Unemployment/Workmen's Compensation,                             _____
       Social Security, Retirements, etc.                            _____
    Other Income (be specific) _____                     _____

               TOTAL MONTHLY GROSS INCOME   __unemployed filed__   $ ___0___

    Monthly Expenses:
    A. Living Expenses
       Rent/Mortgage                                      $ _____
       Total Utilities: Gas, Electricity, Water, etc      _____
       Food                                               _____
       Clothing                                           _____
       Health Care/Medical                                _____
       Insurance                                          _____
       Car Payment(s)/Transportation Expenses             _____
       Loan Payment(s)                                    _____

*OPTIONAL            __Live with family__

AFFIDAVIT OF SUBSTANTIAL HARDSHIP AND ORDER

Form C-10  Page 2 of 2    Rev.2/95

Monthly Expenses:(cont'd page1)
Credit Card Payment(s)                                    60
Educational/Employment Expenses          Currently Enrolled
Other Expenses (be specific) _____

                                                                    A  $ _____
Sub-Total                                    $ _____

B.   Child Support Payment(s)/Alimony         $   254
Sub-Total                                              B  $ _____
C.   Exceptional Expenses                      $ _____

                                                                    $   314
TOTAL MONTHLY EXPENSES (add subtotals from A & B monthly only)

Total Gross Monthly Income Less total monthly expenses:
DISPOSABLE MONTHLY INCOME                                    $ _____

4.   LIQUID ASSETS:
Cash on Hand/Bank (or otherwise available such as stocks,    $    0
bonds, certificates of deposit)                                   0
Equity in Real Estate (value of propaty less what you owe)       0
Equity in Personal Property, etc. (such as the value of
motor vehicles, stereo, VCR, furnishing, jewelry, tools,
guns, less what you owe)
Other (be specific)                                              0
Do you own anything else of value? ☐ Yes ☐ No
(land, house, boat, TV, stereo, jewelry)
If so, describe _____                                   0

TOTAL LIQUID ASSETS

5.   Affidavit/Request
I swear or affirm that the answers are true and reflect my current financial status. I understand that a false statement or answer to
any question in the affidavit may subject me to the penalties of perjury, I authorize the court or its authorized representative to obtain
records of information pertaining to my financial status from any source in order to verify information provide by me. I further
understand and acknowledge that, if the court appoints an attorney to represent me, the court may require me to pay all or part of
the fees and expenses of my court-appointed counsel,

Sworn to and subscribed before me this

_____
Affiant's Signature

1  day of  March ,  2019

_Jon Martin Dampsey_____              _Michael Hines_____
Judge/Clerk/Notary                        Print or Type Name

MY COMMISSION EXPIRES JANUARY 25  2023    ORDER OF COURT

SECTION II
IT IS THEREFORE, ORDERED, AND ADJUDGED BY THE COURT AS FOLLOWS:
☐ Affiant is not indigent and request is DENIED.
☐ Affiant is partially  indigent and able to contribute monetarily toward his/her defense; therefore defendant is ordered to pay
   $_____ towards the anticipated cost of appointed counsel. Said amount is to be paid to the clerk of court or as otherwise
   ordered and disbursed as follows:
☑ Affiant is indigent and request is GRANTED.
☐ The prepayment of docket fees is waived.

IT IS FURTHER ORDERED AND ADJUDGED that _____ is hereby appointed as counsel to represent
affiant.
IT IS FURTHER ORDERED AND ADJUDGED that the court reserves the right and may order reimbursement of attorney's fees and
expenses, approved by the court and paid to the appointed counsel, and costs of court
Done this _____ day of _March_____  2019

_____
Judge

| State of Alabama<br>Unified Judicial System<br><br>Form C-34       Rev. 4/2017 | **SUMMONS**<br>**-CIVIL-** | Court Case Number<br><br>CV201900076 |
|---|---|---|

IN THE _____ COURT OF _____ COUNTY, ALABAMA
         *(Circuit, District, or Juvenile)*          *(Name of County)*

Michael Hines                                    3M

_____                        _____
*[Name(s) of Plaintiff(s)]*                *[Name(s) of Defendant(s)]*

FILED IN OFFICE
CIRCUIT CIVIL DIVISION
MAR 01 2019
JACQUELINE ANDERSON SMITH
CLERK

NOTICE TO: 3M 3M Corporate Center St. Paul, MN 55144
*(Name and Address of Defendant)*

THE COMPLAINT  OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE  ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF  YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH  THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR  YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), Michael Hines 6103 Barrington Park Moody, AL 35004 WHOSE
*[Name(s) of Attorney(s)]*
ADDRESS(ES) IS/ARE: _____

_____
*[Address(es) of Plaintiff(s) or Attorney(s)]*

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN_____DAYS  AFTER THIS SUMMONS AND COMPLAINT OR OTHER  DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR  THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

---

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL**
**PROCEDURE TO SERVE PROCESS:**

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☐ Service by certified mail of this Summons is initiated upon the written request of _____
                                                                                  *[Name(s)]*
pursuant to the Alabama Rules of Civil Procedure. Jacqueline Anderson Smith By: _____
MAR 0 1 2019
_____                    _____          _____
*(Date)*                                  *(Signature of Clerk)*           *(Name)*

☑ Certified Mail is hereby requested.          _____
                                               *(Plaintiff's/Attorney's  Signature)*

---

**RETURN ON SERVICE**

☐ Return receipt of certified mail received in this office on_____.
                                                                          *(Date)*
☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____in _____County,
              *(Name of Person Served)*                    *(Name of County)*
Alabama on_____.
                      *(Date)*

_____        _____        _____
*(Type of Process Server)*   *(Server's Signature)*          *(Address of Server)*

                     _____        _____
                     *(Server's Printed Name)*          *(Phone Number of Server)*

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*®.

OFFICIAL USE

Certified Mail Fee

$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)         $
☐ Return Receipt (electronic)       $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required          $
☐ Adult Signature Restricted Delivery $

Postage

$

Total Postage and Fees

$

Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

Postmark
Here

7018 1830 0000 5747 2872

PS Form 3800, April 2015 PSN 7530-02-000-9047      See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

3M
3M CORPORATION CENTER
ST PAUL, MN 55144

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 4479 8248 7503 21

2. Article Number *(Transfer from service label)*
7018 1830 0000 5747 2872

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by *(Printed Name)*      C. Date of Delivery

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

CW19 000076 SC

3. Service Type
☐ Adult Signature                    ☐ Priority Mail Express®
☐ Adult Signature Restricted Delivery ☐ Registered Mail™
☐ Certified Mail®                     ☐ Registered Mail Restricted Delivery
☐ Certified Mail Restricted Delivery  ☐ Return Receipt for Merchandise
☐ Collect on Delivery                 ☐ Signature Confirmation™
☐ Collect on Delivery Restricted Delivery ☐ Signature Confirmation Restricted Delivery
☐ ... Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

MICHAEL HINES, JR.,                    )

     Plaintiff,                        )

V.                                     )        CV:        CV201900076

3M                                     )        JURY TRIAL DEMANDED

     Defendant.                        )

FILED IN OFFICE
CIRCUIT CIVIL DIVISION

MAR 01 2019

JACQUELINE ANDERSON SMITH
CLERK

## COMPLAINT

I Michael Hines served in the United States Army from 2004-2008. While in service I was issued Dual-Ended Combat Arms Earplugs, that were manufactured by the Minnesota based company 3M between 2002 and 2015. The Dual-Ended Combat Arms Earplugs damaged my ears and as a result I was diagnosed with tinnitus, which leaves a constant ringer in both ears. Due to the ear plugs being defective, I have lost many job opportunities oversea because I always failed the hearing examines due to tinnitus and the loss of balance to the extinct, I have to wear large knee braces, also being affected by the dizziness. By not being able to be employed in the field that I enjoyed it left me depressed and made me go into isolation after feeling less worthy due to not be able to obtain a job. The defendants 3M product has ruined

my life and altered my body for the worst because I have to live with this injury for the rest of my life  and I did not ask to have this injury.

Attached you will find that on, July 26, 2018 the Department Of Justice settled with 3M for violating the False Claims Act(Exhibit A), which led to the public gaining notice of their actions. Medical documentation(Exhibit B) that shows that Plaintiff has been diagnosed with tinnitus which is an injury caused by the defective earplugs.

**Demand For Relief: $1,300,000**
**Pain, suffering and mental anguish; and past and future wage loss due to the tinnitus**

Michael Hines (Pro Se)
6103 Barrington Park
Moody, Al 35004
(907) 301-5169

CV201900076

# EXHIBIT A

2/26/2019                3M Company Agrees to Pay $9.1 Million to Resolve Allegations That it Supplied the United States With Defective Dual-Ended Combat Ar...

Case 3:19-cv-00952-MCR-GRJ   Document 1   Filed 04/05/19   Page 46 of 53

## JUSTICE NEWS

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE                                                                    Thursday, July 26, 2018

## 3M Company Agrees to Pay $9.1 Million to Resolve Allegations That it Supplied the United States With Defective Dual-Ended Combat Arms Earplugs

The Department of Justice announced today that 3M Company (3M), headquartered in St. Paul, Minnesota, has agreed to pay $9.1 million to resolve allegations that it knowingly sold the dual-ended Combat Arms Earplugs, Version 2 (CAEv2) to the United States military without disclosing defects that hampered the effectiveness of the hearing protection device.

"The Department of Justice is committed to protecting the men and women serving in the United States military from defective products and fraudulent conduct," said Acting Assistant Attorney General Chad A. Readler of the Department's Civil Division.  "Government contractors who seek to profit at the expense of our military will face appropriate consequences."

"Through rigorous enforcement of the False Claims Act, we protect taxpayer dollars from waste, fraud, and abuse," said U. S. Attorney Sherri Lydon for the District of South Carolina.  "And in this case in particular, we are proud to defend the integrity of our military programs and ensure that our men and women in uniform are adequately protected as they serve our country."

"Today's settlement will ensure that those who do business with the government know that their actions will not go unnoticed," said Frank Robey, director of the U.S. Army Criminal Investigation Command's Major Procurement Fraud Unit. "Properly made safety equipment, for use by our Soldiers, is vital to our military's readiness. Our agents will respond robustly to protect the safety of our military."

"This settlement demonstrates the commitment of the Defense Criminal Investigative Service and our law enforcement partners to hold companies accountable for supplying substandard products, in particular products that could directly impact our service members' health and welfare.  DCIS protects the integrity of Defense Department programs by rooting out fraud, waste, and abuse that negatively affect the wellbeing of our troops," said Special Agent in Charge Robert E. Craig, Jr., DCIS Mid-Atlantic Field Office.

The settlement announced today resolves allegations that 3M violated the False Claims Act by selling or causing to be sold defective earplugs to the Defense Logistics Agency.  Specifically, the United States alleged that 3M, and its predecessor, Aearo Technologies, Inc., knew the CAEv2 was too short for proper insertion into users' ears and that the earplugs could loosen imperceptibly and therefore did not perform well for certain individuals.  The United States further alleged that 3M did not disclose this design defect to the military.

The allegations resolved by the settlement were brought in a lawsuit filed under the *qui tam*, or whistleblower, provisions of the False Claims Act.  The act permits private parties to sue on behalf of the government when they believe that defendants submitted false claims for government funds and to share in any recovery.  As part of today's resolution, the whistleblower will receive $1,911,000.

The settlement was the result of a coordinated effort by the Civil Division of the Department of Justice, the United States Attorney's Office for the District of South Carolina, the Army Criminal Investigation Command, and the Defense Criminal Investigative Service.

2/26/2019     Case 3:19-cv-00952-MCR-GRJ   Document 1   Filed 04/05/19   Page 47 of 53

3M Company Agrees to Pay $9.1 Million to Resolve Allegations That It Supplied the United States With Defective Dual-Ended Combat Ar…

The case is captioned *United States ex rel. Moldex-Metric v. 3M Company*, Case No. 3:16-cv-1533-MBS (D.S.C.). The claims resolved by the settlement are allegations only, and there has been no determination of liability.

---

**Topic(s):**
False Claims Act

**Component(s):**
Civil Division
USAO - South Carolina

**Press Release Number:**
18-984

*Updated July 26, 2018*

Gridulator

CV201900076

# EXHIBIT B

```
MailMan message for BLAIR,MARY  RELEASE OF INFORMATION CLERK
Printed at BIRMINGHAM.MED.VA.GOV  12/26/18@12:38
Subj: HINQ response for HINES,MICHAEL DEWAYNE JR /requested by BLAIR,MA
[#200010072] 12/26/18@12:37  53 lines
From: POSTMASTER  In 'IN' basket.   Page 1
-------------------------------------------------------------------------
HINES,MICHAEL DEWAYNE JR MAY 15,1985                         \Div:
BIRMINGHAM VA CLINIC
      VBA name = MDHINES                     Verified Svc-Data
   Prior names =
         MICHAEL DEWAYNE HINES

         MICHAEL DEWAYNE HINES

        Name = MICHAEL D HINES
     Address = 1512 LaTouche St Uni
     Address = Anchorage AK
         ZIP = 99501
         Sex = MALE
Date of Birth = MAY 15, 1985
     VBA SSN =            Verified SSA

      Claim Number =
      Service Number =
   Folder Location = 363 - ANCHORAGE RO
             POW = Not applicable
   Total Active Svc = 3 yr 7 mo 8 days
INDICATORS( Active Duty Training NO    Homeless Veteran NO )

   Service data - VBA
   ------------------------------------------------------------
   Svc Branch: Army

         EOD: OCT 21,2004
         RAD: MAY 28,2008

   Char of Svc: Under Hon Cond

Type Benefit:
DISABILITIES
Combined %=100    Disab. in Record=4    Eff. Date of Comb. Eval.=NO
V 26,2012

                                        Orig
   Curr
      SC Disability                  %  Extr  Eff Dt
   Eff Dt
9411-POST-TRAUMATIC STRESS DISORDER    -100%-  -NOV 26,2012-
NOV 26,2012
5003-ARTHRITIS, DEGENERATIVE           -10 %-LL-NOV 26,2012-
NOV 26,2012
5260-LIMITED FLEXION OF KNEE           -10 %-RL-NOV 26,2012-
NOV 26,2012
6260-TINNITUS                          -10 %- -NOV 26,2012-
NOV 26,2012

     Perm.,Total Disability = Yes
     Competency indicator = Competent, or not an issue
```

CERTIFIED COPY

DEPARTMENT OF VETERANS AFFAIRS
700 SOUTH 19TH STREET
BIRMINGHAM, AL 35233

# CERTIFICATE OF SERVICE

I hereby certify that on the __9__ day of __March__, 2019, I have served a copy of the above and foregoing on counsel for all parties by:

**X**     Emailing Defendants and Placing a copy of same in the Mail.

3M
3M Corporate Center
St. Paul, Minnesota 55144
T: 1(888)364-3577

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

USPS TRACKING#

9590 9402 4479 8248 7503 21

United States
Postal Service

* Sender: Please print your name, address, and ZIP+4® in this box®

JACQUELINE ANDERSON SMITH, CLERK
ROOM 400 JEFF CO COURTHOUSE
716 RICHARD ARRINGTON JR BLVD., NO.
BIRMINGHAM, ALABAMA 35203

IN OFFICE
CIRCUIT CIVIL DIVISION

MAR 1 2 2019

JACQUELINE ANDERSON SMITH
CLERK

03/07

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

3M
3M CORPORATION CENTER
ST PAUL, MN 55144

9590 9402 4479 8248 7503 21

2. Article Number (Transfer from service label)

7018 1830 0000 5747 2872

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee



B. Received by (Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No



3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery



AlaFile E-Notice

01-CV-2019-000076.00

Judge: DONALD E. BLANKENSHIP

To: HINES MICHAEL JR (PRO SE)
6103 BARRINGTON PARK
MOODY, AL, 35004-0000

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

MICHAEL HINES VS 3M
01-CV-2019-000076.00

The following matter was served on 3/12/2019

**D001 3M**
**Corresponding To**
CERTIFIED MAIL

JACQUELINE ANDERSON  SMITH
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
jackie.smith@alacourt.gov